Elias R. Bowen

*v.*

A. J. Galloway, Receiver.

*Filed at Ottawa September 25, 1880—Rehearing denied March Term, 1881.*

1. ·Description in deed—*identity of lot.* Where one-half of block numbered 13 was divided into eight lots forty feet wide and 116 feet deep, running back to an alley, and lots one and two were sub-divided into five lots twenty-three feet wide and eighty feet deep, running across the original lots one and two, and the owner of lot four of the sub-division, on which was a two-story house with a basement, and whose title was of record, executed a deed of trust to secure a loan of money, in which the lot was described as lot 4, in block 13, of the addition, "having a frontage of 24½ feet, and a depth of 80 feet—one two-story and basement frame dwelling house thereon," and it appeared that no such dwelling house was on the original lot 4, it was *held,* the description in the trust deed was sufficient to render the record of that deed notice to subsequent purchasers of lot 4, of the sub-division, and that the description was sufficient to show that sub-lot 4 was the one conveyed, and not the original lot 4.

2. It is not necessary to the conveyance of any parcel of land that it shall be called by any particular name, but it will be enough if the description is such as to identify the property. Critical accuracy in the description is not essential.

3. Recording act—*sufficiency of description in the deed.* Where the description of land in a deed is, by mistake, so defective that the property can not be identified, the record of such deed will not be notice to a subsequent purchaser, and such a deed can not be reformed as against a subsequent *bona fide* purchaser of the property.

Appeal from the Circuit Court of Cook county; the Hon. E. S. Williams, Judge, presiding.

Mr. H. M. Matthews, and Mr. E. R. Bowen, for the appellant:

The decree is erroneous in finding that Foraast did convey sub-lot 4 to Monroe. The only deed in evidence shows that he conveyed " lot 4, of block 13, in Ogden's Addition to Chicago, having a frontage of $24\frac{1}{2}$ feet and a depth of 80 feet. Also one two-story and basement frame dwelling thereon." These dimensions apply only to sub-lot 5, which was one of the lots then owned by Foraast. So far as the house is concerned, there is nothing in that to show which lot was conveyed. The conveying of lot 4, using the plat description, was only a conveyance of lot 4, and not of sub-lot 4.

A description by metes and bounds is the highest class of description, and must prevail over any other one, and the description by the surveyed plat falls within the same rule. *Davis* v. *Rainford*, 17 Mass. 211; *Lunt* v. *Holland*, 14 Mass. 149; *Jackson* v. *Cole*, 16 Johns. 256; *Jackson* v. *Loomis*, 18 Johns. 81; *Van Wyck* v. *Wright*, 18 Wend. 157; *Kruse* v. *Scripps*, 11 Ill. 103; *Benedict* v. *Gaylord*, 11 Conn. 332; *Butler* v. *Midger*, 7 Cow. 723; *Jackson* v. *Sprague*, 1 Paine, 496; *Myers* v. *Ladd*, 26 Ill. 417; *Sickmon* v. *Wood*, 69 id. 330.

The decree is erroneous in finding that the recording of the trust deed was notice to subsequent purchasers of sub-lot 4. The notice given by the record of a deed is no greater than the legal meaning of the description.

Where there is any ground for question, the fact that the grantor does not hold the legal title of the land conveyed, affords no evidence of mistake. *Rogers* v. *Kavenaugh*, 24 Ill. 585; *Fitzpatrick* v. *Fitzpatrick*, 36 Iowa, 674; *Jackson* v. *Wilkinson*, 17 Johns. 157; *Wilson* v. *Rogers*, 77 Ill. 79; *Sutherland* v. *Sutherland*, 69 id. 488; *Kellogg* v. *Hastings*, 70 id. 598.

Messrs. E. W. and W. W. Evans, for the appellee.

Mr. CHIEF JUSTICE DICKEY delivered the opinion of the Court:

In December, 1868, and before that time, a map of block 13, in Ogden's addition to Chicago, recorded in the recorder's office of Cook county, was as follows:

PLAT OF BLOCK 13 of Ogden's Addition to Chicago.

Hubbard St.

That half of the block lying on Sangamon street was originally platted in eight lots, fronting on Sangamon street and running back to an alley near the centre of the block.

These lots fronting on Sangamon street (with the exception of lot 8, which occupied the corner of Sangamon and Hub-

bard streets) were 40 feet wide on Sangamon street, and run back to the alley, a distance of about 116 feet.

Afterwards, and before December, 1868, the original lots 1 and 2, embracing the north 80 feet of that half of the block fronting on Sangamon street, were subdivided into five lots, as shown on the map, each fronting on West Indiana street. The lots of this subdivision were numbered 1, 2, 3, 4 and 5; lot 1 lying upon the alley and lot 5 occupying the corner of West Indiana and Sangamon streets. These lots run back 80 feet from West Indiana street (across the original lots 1 and 2), and were 23 feet front on West Indiana street, except lot 5, which was 24½ feet.

About the 31st of December, 1868, Knud K. Foraast had acquired title to lots 4 and 5 of the subdivision of original lots 1 and 2, which title was of record. He had a contract for the north 20 feet of the original lot 4 in this block 13, which was not recorded.

On lot 4, in the subdivision, was a two-story and basement frame dwelling.

In this condition of affairs, Foraast executed to Henry S. Munroe a deed of trust, to secure his promissory note of that date, made payable to the Stock and Mutual Insurance Company, at sixty days, for the sum of $1800, with interest at the rate of 7 per cent, by which he conveyed to Munroe " all the following described lots and premises, situated in the city of Chicago, in the county of Cook, State of Illinois, to-wit: Lot No. 4, in block 13, in Ogden's addition to Chicago, having a frontage of 24½ feet and a depth of 80 feet. Also one two-story and basement frame dwelling house thereon." This instrument was duly executed and acknowledged by Foraast and his wife, and filed for record in the recorder's office of Cook county, on the 6th day of March, 1869.

This is a bill brought by Andrew J. Galloway, the holder of the note described in that deed of trust, as receiver of the National Insurance Company, and afterwards prosecuted by

E. Webster Evans, as holder of said note as receiver of the Stock Mutual Insurance Company.

The bill is brought to foreclose this deed of trust made to Munroe, and to subject lot No. 4, of the subdivision of lots 1 and 2, of block 13, to sale for the satisfaction of the debt mentioned in the promissory note,—and to that end the prayer of the bill is that the description in the trust deed to Munroe shall be so reformed as to distinctly identify that lot. Bowen and others were made defendants. Bowen claims the property in question by conveyances made by Foraast subsequent to the record of the deed of trust to Munroe, and claims to hold as a *bona fide* purchaser of sub-lot 4 without notice of the deed of trust made by Foraast to Munroe, and insists that the description contained in the deed of trust to Munroe was not sufficient to put him on inquiry or charge him with notice of the existence of that deed. As between the creditor claiming under the Munroe deed of trust and Foraast, there can be no question that complainant was entitled to the relief sought. For it is distinctly shown that it was the intention of both parties to describe lot 4 of the subdivision, and not the original lot 4 of the block.

The question, however, for decision is, whether the description in the Munroe deed of trust is sufficient to render the record of that deed notice to subsequent purchasers.

It is not necessary to the conveyance of any parcel of land that it should be called by any particular name. It is only necessary that the description should be such as to identify the property. Critical accuracy in the description is not essential. Upon the plat as it then stood upon record, there were *in* block 13 two lots 4,—one the original lot 4, with 40 feet front and 116 feet deep,—the other, sub-lot 4, 23 feet front and 80 feet deep. On sub-lot 4 was a two-story and basement frame dwelling; on original lot 4 there was no such building. Foraast, by the records, had title in fee simple to sub-lot 4, and had no title whatever to the original lot 4

of block 13.   It seems plain that with this description, no reasonable man could fail to identify the property conveyed by this Munroe trust deed.   The mistake of 18 inches in stating the frontage of the lot is so small as to be a matter of no moment whatever, and the identification, by the description of the house which stood upon the lot, is conclusive.

The prayer for reformation of the deed is not a matter that is at all essential.   The deed was sufficient without reformation.   It was no doubt better that in the decree it should be more distinctly described.   It is true, that where the description of property in a deed is, by mistake, so defective that it can not be identified, the record of such deed would not be notice to a subsequent purchaser; and it is also true that while such a mistake in a deed may be reformed, as between the parties to it, no reformation of such deed could lawfully be made as against a subsequent *bona fide* purchaser of the property.   But in this case we can not regard Bowen, or any of those through whom he derives title, as *bona fide* purchasers.   The record of the Munroe trust deed was sufficient notice to put each and every of them upon inquiry. Such inquiry could not fail to furnish them the necessary information as to the property which was described in that deed.

There is an attempt to show, by the testimony of some of the witnesses, that there was a story and a half or a two story frame building with a basement on original lot 4,—but the testimony, when carefully scrutinized, fails to show that this was true.   The building spoken of by the witnesses must have been on original lot 3; and even if shown to have been upon original lot 4, it was not a dwelling house, nor had it, in fact, any basement.   Two of the witnesses talk about a basement to that house, but upon cross-examination they show clearly that it had no basement.   The house simply stood upon posts, four or five feet high, which were boarded in. The evident truth, as shown by this record, is that the small

lot 4 did have upon it a two story frame and basement dwelling, and that original lot 4 never had any such dwelling upon it.

The decree of the circuit court of Cook county must be affirmed.

*Decree affirmed.*